This is an appeal from a judgment entered on a jury verdict in favor of defendants Michael Farrier, Jimmy Gibbs, and Wayne Dooley. On February 18, 1986, the plaintiff, Brenda Dinmark, filed a claim for false imprisonment against Michael Farrier and Hudson-Thompson, Inc. On March 17, she amended her complaint to add Jimmy Gibbs, Wayne Dooley, and Big Bear Super Foods. On March 28, the trial court granted summary judgment in favor of Hudson-Thompson, Inc., and on May 7, Big Bear Super Foods was dismissed. The facts surrounding this case are as follows:
On February 23, 1985, between 8:00 and 9:45 p.m., after drinking one beer, Dinmark drove her grandmother to a grocery store. Dinmark illegally parked her car in front of the store. She also had another beer in her possession. Her grandmother went inside the store, and Dinmark waited in the car for her grandmother to return. Farrier, a policeman working as a security guard, asked Dinmark's grandmother to ask Dinmark to move her car because she was illegally parked. Farrier also asked a store clerk to ask Dinmark to move her car. In *Page 820 
response to his requests, Dinmark rolled up her window and refused to move her car. Farrier then told Dinmark to move her car, that he was a security officer and a policeman, and that if she did not move her car, he would have to place her in jail. Dinmark then moved her car. Upon returning to the store, Farrier told Dinmark's grandmother that he almost had to lock Dinmark up. Dinmark noticed Farrier talking to her grandmother. She went inside and in a loud manner began an argument with Farrier about Farrier's reporting to her grandmother. Farrier began walking toward the manager's office; as Dinmark followed, maintaining her loud behavior. Farrier began relating the events of the incident to the manager. Farrier then asked Dinmark to leave the store. He again informed Dinmark that he was a police officer and showed her his badge. She told Farrier that his badge meant nothing to her and brought her purse around in front of her. Farrier testified that he thought she was going to take something out of the purse. Farrier told Dinmark she was under arrest and grabbed Dinmark, and a scuffle ensued while Farrier tried to get Dinmark's purse from her. Farrier held Dinmark until other police officers arrived. Dinmark was arrested and charged with resisting arrest, failure to obey a police officer, and disorderly conduct. She was taken to jail and placed in a drunk tank. Her blood alcohol level registered .01%. The municipal court found Dinmark not guilty of the charges. Following her acquittal, Dinmark brought this action. On appeal she argues that the trial court erred when it admitted a memorandum concerning the criminal charges; that the trial court erred in instructions to the jury on probable cause; and that the trial court erred in finding that Farrier acted in his capacity as a police officer. We affirm.
 I.
Dinmark first argues that the trial court should not have admitted the legal memorandum prepared by an attorney in her trial on the criminal charges. Defendants introduced at trial a composite exhibit of three docket sheets from Municipal Court that showed Dinmark as being acquitted on her criminal charges. No objection was made to these docket sheets. Under the section of the docket sheet entitled "Actions, Judgments, Case Notes," is the following: "5-2-86 NOT GUILTY. See defendant's brief — no response from City Prosecutor." Dinmark argues that the memorandum should not have been admitted because it was hearsay, legal opinion, and conclusory. Farrier argues that the memorandum was properly admitted in that it was incorporated by reference on the docket sheets.
Farrier cites Burgin v. Sugg, 210 Ala. 142, 97 So. 216
(1923), for support of his argument that the memorandum was incorporated by reference. Burgin involved a number of complainants and a judgment that did not specify which complainant was to recover damages. On appeal it was argued that the decree was uncertain because it did not state who would receive the damages. The court held that "[e]very judgment of a court of justice must either be made perfect in itself, or capable of being made perfect by reference to the pleadings, or to the papers on file in the cause, or else to other pertinent entries on the court docket." 210 Ala. at 144,97 So. at 218, quoting Flack v. Andrews, 86 Ala. 395,55 So. 452 (1888). In Burgin, the judgment of the trial court referred to other decrees made by the trial court; therefore, by looking at the other decrees, one could eliminate uncertainty as to who should receive the proceeds and one could determine that the judgment was complete. In this case, the docket sheet clearly states that Dinmark was found "not guilty," and the docket sheet clearly makes reference to the memorandum. In this case, the judgment of "not guilty" was complete in and of itself and there was no need to refer to the memorandum for clarity of the result.
However, the admission of the memorandum was harmless error, if error at all. The main purpose of the memorandum was to emphasize that the police officer, when "moonlighting" as a security officer, could not, absent some change in his status, act *Page 821 
in his function as a policeman.[1] Apparently, from the trial court's judgment entry, this was the ground for Dinmark's acquittal. In order for the admission of evidence to be reversible error, "the error complained of [must have] probably injuriously affected [the] substantial rights of the parties." Rule 45, A.R.App.P. The burden is with the appellant not only to show error, but also to show probable injury. Wallace v.Phenix City, 268 Ala. 413, 108 So.2d 173 (1959). In this case, Dinmark argues that her case was prejudiced by the admission of the memorandum because, she says, the memorandum invaded the province of the court and the legal interpretation of the memorandum conflicted with the trial court's jury instruction. Although such a complaint was alleged by Dinmark, there was no conflict between the law as stated in the memorandum and the jury instructions.[2] Therefore, no reversible error occurred by the admission of the memorandum.
 II.
Dinmark argues, second, that the trial court erred when it instructed the jury that probable cause or the good faith of the person making the arrest is admissible to rebut a claim for punitive damages. In Yancey v. Farmer, 472 So.2d 990
(Ala. 1985), we held that probable cause is admissible to rebut a claim for punitive damages. Dinmark argues that when the trial court defined probable cause, the court, in essence, told the jury that, with probable cause, an illegal arrest is justified. However, Dinmark's argument is misplaced. In the paragraph preceding the discussion of probable cause, the trial court stated the following:
 "Now, the good faith of the person making the arrest, the law says, or the existence of probable cause does not justify trespass, does not justify
an illegal arrest, good faith doesn't." (Emphasis added.)
At the beginning of the paragraph concerning probable cause, the trial court said the following:
 "Probable cause then, can be considered, as far as
whether or not you are going to bring any punitive damages." (Emphasis added.)
The trial court, at the onset of its discussion of probable cause, limited it to the area of punitive damages. Therefore, as the instructions were not confusing or misleading, no error resulted.
 III.
Dinmark's final argument is that the trial court erred when it ruled that Farrier was acting in his capacity as a police officer when arresting Dinmark. Dinmark argues that her arrest occurred as a direct result of Farrier's working as a security officer and not as a policeman. She argues, therefore, that her arrest was invalid and cites Robinson v. State, supra, n. 1. However, as discussed in footnote 1 to this opinion, inasmuch as the police officer in Robinson did not witness a misdemeanor or receive a report of a felony, he was, acting as a security officer. Robinson, supra. In this case, however, Farrier did witness some of the events, and he did not arrest Dinmark until after he had identified himself as a policeman. Farrier's status changed when he witnessed Dinmark's acts in his presence. He, therefore, was acting within his authority as a policeman when he made the arrest. See Perry v. Greyhound BusLines, 491 So.2d 926 (Ala. 1986), and Robinson, supra. Because Farrier was acting within his authority as a *Page 822 
policeman, the trial court committed no error in instructing the jury.
For the reasons set forth, the judgment of the trial court is due to be affirmed.
AFFIRMED.
JONES, ALMON, SHORES and STEAGALL, JJ., concur.
[1] Robinson v. State, 361 So.2d 1113 (Ala. 1978). A change in the policeman's status would occur if he saw a crime committed in his presence. In Robinson, the off-duty policeman made an arrest in a crime not committed in his presence.
[2] Dinmark argues that the jury instruction stating that a police officer may arrest a person without a warrant for a public offense committed or a breach of the peace threatened in his presence conflicts with the law in the memorandum dealing with police officers who "moonlight' and make arrests. No conflict is present, because the jury instruction set forth a basic premise of the law and the memorandum applied to a more specific instance when an off-duty police officer working as a security officer makes an arrest for a crime not committed in his presence.