Copenhagen Reinsurance Company ("Copenhagen"), as subrogee of Addie P. Reed, deceased, appeals from the trial court's summary judgment in favor of Champion Home Builders Company, Inc. ("Champion"). We affirm in part, reverse in part, and remand.
Following a fire resulting in the destruction of a mobile home, Addie P. Reed, Beronica R. Farmer, and Copenhagen (sometimes collectively referred to as "the plaintiffs") sued Jack Lee, individually, and d/b/a Jack Lee Mobile Homes; Showplace Housing of Alabama, Inc. ("Showplace"); and Champion (sometimes collectively referred to as "the defendants"), seeking damages under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") and alleging negligence and wantonness, breach of express and implied warranties, and breach of contract. The plaintiffs' complaint alleged that Reed and Farmer had purchased a new mobile home from Lee and Showplace and that, immediately after the mobile home was set up, they began to notice electrical problems with the mobile home, which they described in the complaint as the "lights going on and off." They further alleged that they had contacted Lee and Showplace on numerous occasions to report the problems, that the problems were never corrected, and that, approximately three weeks after the mobile home was set up, it was destroyed by a fire. Copenhagen had issued a policy of insurance on the mobile home; it paid Reed and Farmer $89,472 for their loss. Champion was identified as *Page 850 
the manufacturer of the mobile home. Champion filed an answer to the plaintiffs' complaint.
Copenhagen filed a motion for a default judgment against Lee, individually, and d/b/a Jack Lee Mobile Homes, and Showplace, after they failed to file a responsive pleading. The trial court entered separate default judgments — one against Lee, individually; one against Lee d/b/a Jack Lee Mobile Homes; and one against Showplace — each in the amount of $89,472. On the motion of Champion, Reed was subsequently dismissed as a plaintiff after a suggestion of her death was filed and no proper substitution of parties occurred; Farmer was also dismissed as a result of her failure to comply with a discovery order. Copenhagen, the sole remaining plaintiff, filed an amended complaint with an additional count asserting that the defendants had violated the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act, 15 U.S.C. § 2301
et seq. ("the Magnuson-Moss Act"). Champion filed an answer to the amended complaint.
Champion filed a motion for a summary judgment with a brief contending that it was due to be granted a judgment as a matter of law on the following grounds: (1) spoliation of evidence because Copenhagen had failed to preserve the remnants of the mobile home; (2) improper notice pursuant to the terms of the mobile home's warranty; (3) lack of privity between Champion, on the one hand, and Reed and Farmer, Copenhagen's insureds, on the other hand; and (4) improper notice of the Magnuson-Moss Act claim. Champion filed evidentiary materials in support of its summary-judgment motion. Copenhagen filed a motion in opposition to Champion's motion for a summary judgment and also filed evidentiary material. Champion filed a response to Copenhagen's motion in opposition. After conducting a hearing on the motions, the trial court entered a summary judgment in favor of Champion, without stating a rationale. Copenhagen filed a notice of appeal to the supreme court, which transferred this case to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
On appeal, Copenhagen contends that the trial court erred by entering a summary judgment in favor of Champion; in its brief to this court, Copenhagen addresses the grounds that Champion asserted in support of its motion for a summary judgment. Our review of a summary judgment is de novo.
 "In reviewing the disposition of a motion for summary judgment, `we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,' Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988), and whether the movant was `entitled to a judgment as a matter of law.' Wright v. Wright, 654 So.2d 542 (Ala. 1995); Rule 56(c), Ala. R.Civ.P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is `substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala. 1993); *Page 851 Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990)."
Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala. 1997).
 I. Spoliation of Evidence
Copenhagen first argues that not all of its claims were due to be dismissed because of spoliation of evidence. The pertinent facts relating to this issue, stated in a light most favorable to Copenhagen, Hobson,supra, are as follows. The mobile home was purchased in August 1998 and set up on September 30, 1998. Immediately after moving in, Farmer began noticing problems with the electrical system such as lights blinking on and off and some electrical outlets not working. Farmer called Lee on at least four occasions, resulting in one of Lee's employees unsuccessfully attempting to fix the electrical problem on one occasion. The mobile home was destroyed by a fire on October 20, 1998. The following morning, Farmer called Lee to tell him that the mobile home had been destroyed by a fire. Lee told Farmer that he would replace the mobile home, but he did not do so. Copenhagen hired two experts to investigate the fire scene in an effort to determine the cause of the fire. Larry Dewberry was the first to examine the fire scene on October 25, 1998; Dewberry was unable to determine the cause of the fire. Owen Posey then examined the fire scene on November 13, 1998; on November 23, 1998, Posey issued a report that stated, in pertinent part:
 "It appears the wiring may have shorted in the breaker panel and melted back down to below the floor. The breaker panel is not available to determine if a short did occur in it which ignite[d] the fire.
 "There was a short found in a receptacle branch circuit on the outside wall of the kitchen area, which could have also ignited the fire. . . . It appears from the burn patterns, on the wood structure, that was not completely burned, that the fire had burned faster under the floor than above it. The heavy burning was in the south end, . . . where the breaker panel and branch circuit short were located.
 "The mobile home duplex receptacles and switches had sharp edge slots that the wires were forced into to create a circuit junction connection. If this connection becomes loose it can create a hot spot in the connection and melt the wires as was found. This is what appears to have happened to cause the short . . . that appears to have ignited the fire.
"Conclusion:
 "The mobile home was almost a complete burn down with some charred stud near the center of the house . . . The heaviest burning was at the south end of the house and kitchen area where the inside breaker panel was located and the melted receptacle wiring was found.
 ". . . It appears a short occurred in the wall or floor near the breaker panel which caused the power problem and ignited the mobile home. The fire spread under the floor and overhead to the remaining [areas] of the mobile home."
Some wiring and the receptacle-branch unit referred to in the report were kept by Posey. Both Dewberry and Posey took photographs of the fire scene during their investigations.
A few days after Posey issued his report, Copenhagen paid for the debris from the fire scene to be removed and discarded. The location of the discarded debris is unknown, leaving the wiring and the receptacle-branch unit kept by Posey as the only physical evidence remaining from the mobile home. Champion did not receive notice of the fire until the lawsuit was filed on August 14, 2000. In support of its motion for a summary judgment, *Page 852 
Champion submitted an affidavit by Michael Southerland, its fire investigator, that stated, in pertinent part:
 "5. I have been unable to inspect the remnants of the mobile home that was owned by Addie Reed and made the subject of this subrogation lawsuit by Copenhagen. . . . It is my understanding that the insurance company failed to preserve the home after the fire.
 "6. I have reviewed the available reports related to the fire and the photographs taken by the insurance company's adjuster and the insurance company's cause and origin investigator, Larry Dewberry, within several days of the fire. I have also reviewed the photos taken by the insurance company's second investigator, Owen Posey, several weeks after the fire, as well as Mr. Posey's report. . . . I have also reviewed the deposition testimony of Larry Dewberry and Owen Posey.
 "7. In addition to my review of the reports, on July 17, 2001, I traveled to Mobile, Alabama to examine wire fragments that had been retained by Owen Posey. Based upon my examination of the wire fragments, it appears that the damage to the wire is consistent with the type of damage that would have been caused by heat exposure during a fire, as opposed to electrical activity. However, without being able to examine the burn patterns near the original location of the wire in the remnants of the home, it is impossible to determine the cause of the wire damage or to form a conclusion regarding the role that the preserved wire played in the fire.
 "8. I also traveled to the scene of the fire. However, the remnants of the home had been removed and a new mobile home had been placed on the lot. While I was unable to examine the remnants of the home, I did notice many cigarette butts on the ground at the site of the fire.
 "9. Due to the limited information available, I have been placed at an extreme disadvantage in determining the true cause or origin of the fire. An important aspect of determining the cause or origin of a fire is an examination of all the evidence and artifacts at the fire scene. Although I have examined photographs taken in this case, they do not present a complete picture of the fire scene in sufficient detail for me to determine the point of origin of the fire, or the cause of the fire. . . .
 "10. The photographs and the wire preserved by Owen Posey failed to provide sufficient evidence for me or anyone else to conclude, to a reasonable degree of scientific certainty, that the fire at the subject home was caused by any particular defect in the home. It would be impossible for me or anyone else to conclude, to a reasonable degree of certainty, that a particular defect (including the defects identified in Owen Posey's report) caused the fire without the ability to physically examine the debris from the fire.
 "11. In conclusion, I have been prevented from determining the exact cause and origin of the fire and perform[ing] the investigation I would have performed had the insurance company retained the debris from the fire to allow me the opportunity to inspect the debris in person and properly investigate the fire."
Copenhagen contends that not all of its claims were due to be dismissed based on Champion's spoliation argument. Rather, it suggests that it would be more appropriate for it to be limited to attempting to prove that the fire was caused only by the evidence preserved by Posey. Under similar facts in Vesta Fire Insurance Corp. v. Sears, Roebuck Co.,705 So.2d 382 (Ala.Civ.App. 1996), this court stated: *Page 853 
 "The facts of this case are indistinguishable from the facts in Cincinnati Ins. Co. v. Synergy Gas, Inc., 585 So.2d 822 (Ala. 1991). In Cincinnati Ins., fire destroyed a home insured by Cincinnati. Within days of the fire, the company sent experts to examine the scene. They concluded that the fire was caused by an LP gas system. An investigator for the Alabama LP Gas Board removed and preserved the regulator from the LP tank, but during the rebuilding of the home the homeowners allowed all of the fire debris, including all of the LP gas system (with the exception of the regulator), to be removed from the premises. The homeowners and Cincinnati later sued Synergy. Synergy's expert stated that she could not formulate an opinion regarding the cause of the fire because the plaintiffs had not preserved any physical evidence from the fire scene and because the only item available for firsthand testing was the regulator preserved by the LP Gas Board investigator. The trial court dismissed the plaintiffs' claims because of their failure to preserve evidence. In Cincinnati Ins., there was no allegation of malicious intent in the destruction of evidence, but the trial court found that it was `inconceivable that an insurance company who had investigators on the fire scene three days after the fire could fail to realize the importance of such evidence in future litigation.' 585 So.2d at 824. Likewise, there is no allegation of malicious destruction of evidence in the case before us. In reversing the dismissal in Cincinnati Ins., our supreme court stated:
 "'We can find no abuse of discretion on the trial court's part in dismissing the plaintiffs' claims that were based on the alleged malfunction of those components of the gas system that were destroyed by the plaintiffs. However, the plaintiffs urge us to allow them to proceed with their claims that are based on the alleged malfunction of the gas regulator, which is still available for further inspection by Synergy's experts. . . . This Court has a long-established and compelling policy objective of affording litigants a trial on the merits whenever possible. Although we do not condone the plaintiffs' willful destruction of the most crucial pieces of the evidentiary puzzle in this case, after careful review we are persuaded that, in keeping with this policy objective, the plaintiffs should be allowed to proceed to trial, but solely on the theory that the gas regulator was defective and that that defect alone caused the fire. By allowing the plaintiffs to proceed to trial solely on this theory, all of the applicable policy objectives will be furthered in this case. The plaintiffs will be afforded the opportunity to have a trial on the merits; the restriction of the plaintiffs' case to the single theory based on the allegedly defective regulator will serve to punish them for their willful destruction of crucial evidence and, therefore, to preserve the integrity of the discovery process; and Synergy will be assured of an opportunity to present an adequate defense.'
"585 So.2d at 827-28 (citations omitted).
". . . .
 "Based on the authority of Cincinnati Ins., we conclude that the trial court erred in entering the summary judgment against Vesta as to all of its claims. Under almost identical circumstances, our supreme court allowed both Cincinnati Insurance and the insured homeowners to pursue the specific claim that the equipment available for testing and inspection caused the fire. We see no reason to treat Vesta differently here. It should be allowed to proceed to trial with the Wilkersons, but solely on the *Page 854 
theory that the air conditioner was defective and that that defect alone caused the fire."
705 So.2d at 383-84.
Based on the authority of both Cincinnati Insurance Co. v. SynergyGas, Inc., 585 So.2d 822 (Ala. 1991), and Vesta Fire Insurance Corp.,supra, we conclude that not all of Copenhagen's claims should have been dismissed on spoliation grounds and that it should have been allowed to proceed to trial solely on the theory that the wiring and the receptacle-branch unit kept by Posey were defective and that they caused the fire, if the other theories advanced by Champion in support of its motion for a summary judgment do not support the trial court's judgment. Thus, it is necessary to examine whether those additional theories support the trial court's judgment.
 II. Improper Notice
Copenhagen also argues that Champion was not due to be granted a summary judgment on Copenhagen's breach-of-express- warranty claim based on Copenhagen's, Farmer's, or Reed's failure to provide proper notice pursuant to the warranty. The warranty at issue, signed on receipt by Reed, states, in pertinent part:
 "Subject to the conditions set forth below, Champion Home Builders Co. (the `Manufacturer') warrants to the owner that each new manufactured home manufactured by it (a) meets all standards prescribed by applicable laws and regulations concerning construction and safety in effect at the time of manufacture, (b) was manufactured and delivered to the Dealer free from substantial defects in material or workmanship, and (c) is reasonably fit for human habitation. . . .
 "The terms of this warranty commence on the day of delivery of the manufactured home to the Original Buyer (the `Effective Date'). For a period of one year following the Effective Date, the Manufacturer or its Dealer will repair or replace any part or parts whose condition does not conform with the above warranties, PROVIDED THAT the Owner gives written notice of any such defect to the Manufacturer or its Dealer at their business address within one (1) year and ten (10) days after the Effective Date."
(Capitalization original; emphasis added.) It is undisputed that the only notice of alleged electrical problems with the mobile home were made by Farmer to Lee by telephone.
In Southern Energy Homes, Inc. v. Washington, 774 So.2d 505 (Ala. 2000), our supreme court addressed a similar claim involving a plaintiff's alleged failure to give proper notice pursuant to a mobile-home warranty. The warranty at issue in that case provided, in pertinent part:
 "'If the owner believes that the home contains a defect covered by this warranty, . . . the owner should notify the service manager at the manufacturer's plant at the address shown below, giving the service manager complete information about the problem. . . . In the event the owner has an emergency problem which might affect the safety of the home or the ability of the owner to reside therein, the owner should immediately notify [Southern] by telephone at (XXX) XXX-XXXX. . . .'"
774 So.2d at 509. In addressing whether sufficient notice had been provided, our supreme court noted:
 "'Express warranties [are] treated like any other type of contract and interpreted according to general contract principles.' See Ex parte Miller, 693 So.2d 1372, 1376 (Ala. 1997) (citing 2 Alphonse M. Squillante John R. Fonseca, *Page 855 Williston on Sales, § 15-9 (4th ed. 1974)). If a company wishes to require a specific mode of notice as a prerequisite to warranty coverage, it may do so. See generally Miller, 693 So.2d at 1376 (stating that a company can limit its warranty coverage); see also Rhode v. ET Invs., Inc., 29 F. Supp.2d 1298, 1303 (M.D.Ala. 1998) (construing a warranty under which a manufacturer agreed to replace defective parts `PROVIDED THAT the Owner gives written notice of any such defect to the Manufacturer or its Dealer at their business address withing one (1) year and ten (10) days')."
774 So.2d at 511.
The warranty at issue in this case requires only one specific mode of notice — written notice. The terms of the warranty are the same as those stated in Rhode v. ET Investments, Inc., 29 F. Supp.2d 1298,1303 (M.D.Ala. 1998), cited in Southern Energy, supra. Since neither Champion nor Lee received written notice pursuant to the terms of the warranty, the trial court correctly granted a summary judgment to Champion on Copenhagen's breach-of-express-warranty claim. Further, because Copenhagen's arguments concerning the trial court's entry of a summary judgment in favor of Champion on its Magnuson-Moss warranty claim relate primarily to its argument that its express-warranty claim was not barred for improper notice, we also conclude that the trial court properly entered a summary judgment in favor of Champion on that claim. Moreover, since the express warranty was the only contract alleged to have existed between Champion and Reed, we conclude that the trial court's entry of a summary judgment as to Copenhagen's breach-of-contract claim was also proper.
 III. Lack of Privity
The negligence and wantonness and breach-of-implied-warranty claims asserted by Copenhagen against Champion are subject to Champion's contention that, because there was no privity of contract between it and Copenhagen's insureds — Reed and Farmer — those claims cannot be asserted. Under the facts of this case, Champion was the "manufacturer" of the mobile home, Lee and Showplace were the "sellers" of the mobile home, and Reed and Farmer were the "buyers" of the mobile home. In Tucker v. General Motors Corp., 769 So.2d 895, 901
(Ala.Civ.App. 1998) (reversed in part on other grounds, Ex parte GeneralMotors Corp., 769 So.2d 903 (Ala. 1999)), this court determined that implied warranties apply only to "sellers" and not to manufacturers. InTucker, this court quoted Rhodes v. General Motors Corp., 621 So.2d 945,947 (Ala. 1993) (quoting in turn Wellcraft Marine v. Zarzour,577 So.2d 414, 419 (Ala. 1990)), for the proposition that'" [t]here is no right of action on an implied warranty theory against a manufacturer for property damage [or for direct economic loss] without privity of contract.'" 769 So.2d at 902. Accordingly, the trial court properly entered a summary judgment on Copenhagen's breach-of-implied-warranty claims.
Copenhagen's negligence and wantonness claims are similarly subject to this lack-of-privity argument. In Keck v. Dryvit Systems, Inc., 830 So.2d 1
(Ala. 2002), our supreme court determined that the plaintiffs' negligence claim failed because the manufacturer had not entered into a contract with them to specially build their mobile home, distinguishing that case from Ex parte Grand Manor, Inc., 778 So.2d 173 (Ala. 2000), and that the manufacturer could not be held liable for negligence when the mobile-home purchasers were unknown to it. The record in this case demonstrates that Reed and Farmer purchased a finished mobile home from Lee and Showplace and that the mobile home had not been specially built by Champion *Page 856 
specifically for Reed and Farmer's use. Therefore, the trial court properly entered a summary judgment in favor of Champion on Copenhagen's negligence and wantonness claims.
 IV. Economic-Loss Doctrine
In its brief on appeal, Copenhagen does not challenge the applicability of the economic-loss doctrine to limit its damages to the amount of money paid to its insureds that was in excess of the value of the mobile home. Copenhagen paid $89,472 to its insureds; $72,782 of that amount represented the value of the mobile home. We further accept Copenhagen's and Champion's assertions in their respective briefs that the doctrine does not limit Copenhagen's ability to seek to recover the remaining amounts paid for the contents of the mobile home, Reed and Farmer's living expenses, and the removal of debris, which totaled $16,690.
 V. Conclusion
In summary, we affirm the trial court's entry of a summary judgment in favor of Champion on all claims except the claim made under the AEMLD. In pursuing its AEMLD claim, Copenhagen will be limited to proceeding solely on the theory that the wiring and the receptacle-branch unit preserved by Posey were defective and that they were the cause of the fire that destroyed the mobile home; Copenhagen's total allowable recovery will be limited to $16,690 pursuant to the economic-loss doctrine, which Copenhagen has admitted applies in this case.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, P.J., and THOMPSON, PITTMAN, and MURDOCK, JJ., concur.