MOORE, Judge.
 

 Randall Stewart and Larry Morgan appeal separately from a judgment entered on a jury’s verdict in favor of James Bradley and Mary Bradley. We reverse and remand for a new trial.
 

 Procedural History
 

 On May 6, 2003, James Bradley and Mary Bradley sued Randall Stewart and Larry Morgan seeking damages arising from the alleged negligent construction of their house. In their complaint, the Brad-leys asserted claims of negligent failure to warn, negligent installation and construction, negligent supervision, misrepresentation, suppression, breach of implied warranty of habitability, breach of contract, and “third party beneficiary.”
 

 The trial court entered summary judgments in favor of Stewart and Morgan as to all claims asserted against them except the claims asserting negligent installation and construction, negligent supervision, and breach of contract. The case was tried before a jury on August 13, 2007. At the conclusion of the Bradleys’ case, Stewart and Morgan filed separate motions for a judgment as a matter of law. Both Stewart and Morgan again moved for a judgment as a matter of law at the conclusion of all the evidence.
 

 The jury rendered a verdict in favor of the Bradleys. On September 12, 2007, the trial court entered a judgment on the jury’s verdict, awarding the Bradleys damages in the amount of $200,000. Morgan and Stewart filed separate postjudgment motions for a judgment as a matter of law or, in the alternative, motions for a new trial. Those motions were denied by operation of law on December 17, 2007.
 
 See
 
 Rule 59, Ala. R. Civ. P. On January 23, 2008, Stewart and Morgan each appealed to the Alabama Supreme Court; that court transferred the appeals to this court, pursuant to § 12-2-7(6), Ala.Code 1975. We have consolidated the appeals.
 

 On appeal, both Stewart and Morgan challenge the denial of their motions for a judgment as a matter of law and the trial court’s refusal to give certain of their requested jury charges. Stewart and Morgan also challenge the denial of them motions for a new trial.
 

 Factual History
 

 Stewart and Morgan are licensed home builders. In 2001, they collaborated on a “spec” house on Funclefburg Bend Road.
 
 *537
 
 On June 19, 2001, the Bradleys entered into a “Sales Contract” with Stewart and Morgan in which the Bradleys agreed to purchase the house.
 

 On June 29, 2001, the parties attended a real-estate closing regarding the property. At that closing, the Bradleys executed a document entitled “Limited Warranty Agreement,” which provided, in part:
 

 “1. Warranty Period. The Seller does hereby provide to the Buyer this Limited Warranty Agreement on the Dwelling for a period of one year (the ‘Limited Warranty Period’) beginning on the date of conveyance of title to the Buyer or the date of initial occupancy of the Dwelling, whichever occurs first (the ‘Limited Warranty Commencement Date’), and the Buyer does hereby agree to the terms of this Limited Warranty Agreement and further agrees to accept this Limited Warranty Agreement as the only warranty given, in lieu of all other warranties of any kind, expressed or implied, with respect to the construction of the Dwelling and the sale thereof to the Buyer. The Limited Warranty Period has been negotiated between the Seller and the Buyer as a part of the negotiation of the terms and provisions of the Contract.
 

 “2. Limited Warranty. The Seller hereby warrants to the Buyer that, for and during the Limited Warranty Period, the Dwelling will be free from Latent Defects, as hereinafter defined. If a latent Defect occurs in an item which is covered by this Limited Warranty Agreement, the Seller will repair, replace, or pay to the Buyer the reasonable cost of repairing or replacing, any such item. The Seller shall in its sole discretion determine whether to repair, replace or pay the reasonable cost of repairing or replacing any such item. THE LIABILITY OF THE SELLER IS STRICTLY LIMITED TO THE OBLIGATION TO REPAIR, REPLACE OR PAY THE REASONABLE COST OF REPAIRING OR REPLACING, ANY SUCH ITEM, AND ANY RIGHT THAT THE BUYER MIGHT HAVE TO RECOVER ANY OTHER OR ADDITIONAL DAMAGES IS HEREBY WAIVED AND EXCLUDED. THE BUYER ACKNOWLEDGES THAT THE SOLE REMEDY AVAILABLE TO THE BUYER HEREUNDER IS THE RIGHT TO REQUIRE THE SELLER TO REPAIR, REPLACE OR PAY THE REASONABLE COST OF REPAIRING OR REPLACING ANY SUCH ITEM. Steps taken by the Seller to correct any Latent Defect under this Limited Warranty Agreement shall not extend the Limited Warranty Period.
 

 “4 LIMITATION UPON LIABILITY. THE SOLE REMEDY AVAILABLE TO THE BUYER UNDER THIS LIMITED WARRANTY AGREEMENT IS THE RIGHT TO REQUIRE THE SELLER TO REPAIR, REPLACE OR PAY THE REASONABLE COST OF REPAIRING OR REPLACING LATENT DEFECTS, AS HEREIN DEFINED, IN THE DWELLING. THE SELLER’S TOTAL LIABILITY UNDER THIS LIMITED WARRANTY AGREEMENT SHALL NOT EXCEED THE ORIGINAL PURCHASE PRICE PAID TO THE SELLER UNDER THE CONTRACT, LESS THE VALUE OF THE REAL PROPERTY UPON WHICH THE DWELLING IS LOCATED. THIS LIMITED WARRANTY AGREEMENT DOES NOT EXTEND TO OR INCLUDE LIABILITY FOR INDIRECT OR CONSEQUENTIAL DAMAGES.
 

 
 *538
 
 “9. Opportunity to Perform. Prior to filing any action under this Limited Warranty Agreement, the Buyer must give to the Seller reasonable notice of and a reasonable opportunity to repair, replace or pay the reasonable cost of repairing or replacing any Latent Defect covered hereunder.
 

 “13. Notice to the Seller. The Buyer shall notify the Seller in writing before the expiration of the Limited Warranty Period of any defect covered by this warranty.... FAILURE OF THE BUYER TO GIVE SUCH WRITTEN NOTICE TO THE SELLER BEFORE THE EXPIRATION OF THE LIMITED WARRANTY PERIOD SHALL BAR ANY RIGHT TO RECOVERY BY THE BUYER PURSUANT TO THIS LIMITED WARRANTY.
 

 “15. WAIVER OF WARRANTIES AND CLAIMS. EXCEPT AS TO ANY VA/FHA WARRANTY DELIVERED TO THE BUYER AT CLOSING, IF ANY, THIS LIMITED WARRANTY AGREEMENT IS GIVEN IN LIEU OF ANY AND ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, HABITABILITY AND WORKMANSHIP, AND IS ALSO IN LIEU OF ANY CLAIMS FOR CONSEQUENTIAL DAMAGES, MENTAL ANGUISH OR DISTRESS, AND FOR DAMAGES BASED UPON NEGLIGENCE, FRAUD OR MISREPRESENTATION, AND THE BUYER HEREBY EXPRESSLY WAIVES AND DISCLAIMS ANY SUCH WARRANTIES AND CLAIMS WITH RESPECT TO BOTH THE DWELLING AND THE REAL PROPERTY UPON WHICH THE DWELLING HAS BEEN CONSTRUCTED.”
 

 (Capitalization and underlining in original.)
 

 According to the Bradleys, they moved into the house in the fall of 2001 and they immediately had problems with the house. It is undisputed that the Bradleys contacted Stewart and Morgan complaining of problems with the house during the fall of 2001. Stewart and Morgan described Mary Bradley’s initial complaint as involving only “punch list” items. However, Mary described her initial complaints as involving, among other things, cracking, loose molding, and unlevel floors. Mary testified as to her communications with Stewart and Morgan concerning problems with the house:
 

 “I’ll go back to the start of it. When it first cracked and the molding around the door started coming loose, I called them out and I asked them why because we had moved furniture in the house and it had got it off level [sic]. They patched it up. They done some painting, stuff like that. The next time I had to call them out there, the children was running across the floors and the dishes trying to fall out and all that unlevel [sic]. The center beam was off.... [and] the floors was falling through. I had to take two screws and screw my curio up to the wall to level it up.”
 

 James Bradley testified that, after moving in, he noticed that
 

 “just that everything that you walked around, everything when you put all the furniture in there and got weight on it, it would rattle as you walked through there and everything.... The floors wasn’t level.... The water coming off the hill and ran up underneath the house when you got real rainy season, muddy.... I liked the house except for it not being level.”
 

 
 *539
 
 James testified that he telephoned either Stewart or Morgan and that “[t]hey told me that wasn’t nothing the matter with it. They would send somebody out there and level it up the best they could. Even after they did that, the thing was still way out of level.”
 

 James testified that Stewart and Morgan came back “again and again” and that he thought that “they sent somebody out there just about all the time to look at it every time you would say something about it but they never did fix it.” Mary acknowledged that, after her contacts with Stewart and Morgan in the fall of 2001, her next contact with them had occurred in December 2002. It is undisputed that Stewart and Morgan talked with the Brad-leys in January 2003 about their complaints.
 

 On February 5, 2003, Mary wrote to Stewart and Morgan, again setting out her complaints about the house. Later in February 2003, after receiving Mary’s letter, Stewart and Morgan went to the Bradleys’ house to make additional repairs; they were accompanied by a representative of the manufacturer of the engineered floor system. According to Stewart and Morgan, they had been prepared to undertake whatever repairs were necessary at the house but they were specifically prepared to work on the foundation, the floor system, and the regrading of the lot. However, Mary’s son asked Stewart and Morgan to leave the Bradleys’ property without allowing them to undertake any additional repairs. The Bradleys instructed Stewart and Morgan to contact their attorney. Mary testified that, as of February 2003, she did not want Stewart and Morgan to continue to work on her house
 

 “because they done been out there two or three times, [my son] and I were sitting at the dining room table, and we heard somebody digging under the house. We didn’t know who or what.... It was the two of them, and they were digging, laying concrete to put the pillars on to hold the house up. The others didn’t have it or they couldn’t find it. I told them, I said ‘No. No. Stop. I want an inspection of this house so I know what has got to be fixed to have this house fixed right for me to live in and it not fall down next month.’ So they never came back out. I told him I wanted an inspector out there, and he never came out.”
 

 Although Stewart testified that the Brad-leys had refused to allow him to make the needed repairs, he acknowledged at trial that, by February 2003, he already had been in the crawl space of the Bradleys’ house on at least four separate occasions.
 

 The Bradleys moved out of the house in March 2003. After moving out of the house, the Bradleys hired professionals to conduct inspections of the property. Those inspections revealed that the foundation, flooring system, brick veneer, and waterproofing systems of the house had been improperly constructed and improperly installed.
 
 [1]
 
 Additionally, the inspectors discovered that the house had been “shimmed” or propped up with wooden blocks in multiple areas of the crawl space in an attempt to level it.
 

 Analysis
 

 The trial court allowed the Brad-leys’ claims of negligent installation and construction, negligent supervision, and breach of contract to go to trial. On ap
 
 *540
 
 peal, Stewart and Morgan assert that the trial court erred in denying their motions for a judgment as a matter of law as to all three of those claims.
 

 “In
 
 Delchamps, Inc. v. Bryant, 738
 
 So.2d 824 (Ala.1999), our supreme court explained the standard of review applicable to a trial court’s ruling on a motion for a judgment as a matter of law:
 

 “ ‘When reviewing a ruling on a motion for a [judgment as a matter of law (“JML”)], this Court uses the same standard the trial court used initially in granting or denying a JML.
 
 Palm Harbor Homes, Inc. v. Crawford,
 
 689 So.2d 3 (Ala.1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case or the issue to be submitted to the jury for a factual resolution.
 
 Carter v. Henderson,
 
 598 So.2d 1350 (Ala.1992). For actions filed after June 11, 1987, the nonmovant must present “substantial evidence” in order to withstand a. motion for a JML. See § 12-21-12, Ala.Code 1975;
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury.
 
 Carter,
 
 598 So.2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw.
 
 Motion Industries, Inc. v. Pale, 678
 
 So.2d 724 (Ala.1996). Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court’s ruling.
 
 Ricwil, Inc. v. S.L. Pappas & Co.,
 
 599 So.2d 1126 (Ala.1992).
 

 “738 So.2d at 830-31.”
 

 Leonard v. Cunningham,
 
 4 So.3d 1181, 1184 (Ala.Civ.App.2008). Using this standard of review, we review the Bradleys’ claims to determine if they were properly submitted to the jury for resolution.
 

 The Enforceability of the Limited-Warranty Agreement
 

 In
 
 Turner v. Westhampton Court, L.L.C.,
 
 903 So.2d 82 (Ala.2004), our supreme court held that the parties to the sale of a new house can validly agree to limit the rights and remedies available to the home buyer in the event the house does not conform to the buyer’s expectations. Addressing the issue as a matter of first impression, the court continued:
 

 “In
 
 Ex parte Miller,
 
 693 So.2d 1372, 1376 (Ala.1997), a case decided under Alabama’s version of the Uniform Commercial Code, we held that a company can limit its warranty coverage. In
 
 Southern Energy Homes v. Washington,
 
 774 So.2d 505, 511 (Ala.2000), we held that a warranty can require a certain method by which the warranty holder notifies the party giving the warranty of a defect covered by the warranty. See also
 
 Copenhagen Reinsurance Co. v. Champion Home Builders Co.,
 
 872 So.2d 848 (Ala.Civ.App.2003). If a purchaser were to attempt to hold the seller liable when the purchaser had not notified seller pursuant to the method set out in the warranty, the seller would not be liable. While these cases are based upon Alabama’s Commercial Code, we see no reason to limit the rule to cases concerning ‘goods.’ Rather, we are led by the principle of freedom of contract. Therefore, we hold that companies selling houses are similarly capable of limiting warranty coverage.
 

 
 *541
 
 “Though we have never decided whether one can effectively disclaim the implied warranty of habitability, one can disclaim an implied warranty of personal property. Ala.Code 1975, § 7-2-316(3). Because it was the existence of an implied warranty as to personal property that was said to justify the recognition of an implied warranty of habitability of a new house, should we not hold that this court-created warranty can be contracted away where a reasonable express warranty of some duration is given to the purchaser of the new house in lieu of that implied warranty?
 

 “These considerations lead us to conclude that the principle of freedom of contract permits a party to effectively disclaim the implied warranty of habitability. To succeed on their claim of breach of the implied warranty of habitability then, the Turners would have to offer substantial evidence indicating that they did not disclaim the implied warranty of habitability.”
 

 903 So.2d at 91-93.
 

 The evidence showed that the builder in
 
 Turner
 
 had given the home buyer a “Limited New Home Warranty” essentially identical to the one at issue in this case. 903 So.2d at 86. Because the evidence established that the purchasers in
 
 Turner
 
 could read the written warranty and because the purchases had produced no evidence indicating that they had not agreed to disclaim all implied warranties, the supreme court affirmed the summary judgment in favor of the home builder as to the purchasers’ claim of breach of the implied warranty of habitability.
 

 The purchasers also appealed the summary judgment in favor of the builder as to their breach-of-contract claim. In addressing that claim, the supreme court stated:
 

 “The Turners’ third allegation is that Westhampton breached the contract of sale by tendering a poorly built house. Specifically, the Turners argue that Westhampton contracted to build the house in accordance with the skill and abilities of a homebuilder and that Westhampton failed to perform this contractual duty. While the Turners characterize this as a cause of action for breach of contract, the cause of action is more accurately classified as one for the breach of the implied warranty of workmanship.
 

 “... In the context of the sale of a new house, a builder-vendor such as Westhampton is obligated to construct a house that it will offer for sale in a workmanlike manner.
 
 Stephens v. Creel,
 
 429 So.2d 278, 280 (Ala.1983). This obligation manifests itself in the implied warranty of workmanship. While improper or faulty construction constitutes a technical performance of the contract and may survive a pure breach-of-contract action, an action alleging the breach of an implied warranty, such as the implied warranty of workmanship, can overcome this obstacle.
 

 “Upon purchasing the house, the Turners signed the warranty provided by Westhampton. The warranty, as discussed above, included a waiver of the right to sue under any other theory of breach of warranty, express or implied. In fact, the warranty explicitly stated that the Turners waived the right to sue based on a breach of the implied warranty of workmanship. Because the warranty contained a disclaimer of the very claim the Turners here allege, the trial court did not err in entering a
 
 *542
 
 summary judgment in favor of Westh-ampton on this claim.”
 

 903 So.2d at 93-94.
 

 The Bradleys urge this court to find the limited-warranty agreement unenforceable under existing Alabama caselaw. However, all the cases cited by the Brad-leys for this point predate
 
 Turner, supra.
 
 This court, as an intermediate court of appeals, is bound to follow the existing precedent of our supreme court.
 
 See
 
 Ala. Code 1975, § 12-3-16. Pursuant to
 
 Turner,
 
 the warranty is generally enforceable if supported by consideration and voluntarily and knowingly agreed to by the Bradleys.
 

 The record affirmatively shows that the Bradleys signed the agreement indicating them assent to the limited warranty. The record contains no evidence to indicate that the Bradleys were deceived or coerced into agreeing to the limited warranty. The Bradleys do not even argue that point. They do argue, however, that they did not request a limited warranty in the sales agreement and, therefore, that the warranty could not have been supported by any consideration. In
 
 Turner,
 
 the supreme court considered similar facts and concluded that the builder in that case had offered the limited warranty at the closing in consideration for the purchasers’ waiving all other warranties. The court found such consideration to be sufficient. 903 So.2d at 93. We conclude that the Bradleys’ warranty was likewise supported by sufficient consideration and that, by accepting the limited warranty at the closing, the Bradleys modified their earlier agreement with Stewart and Morgan.
 

 The Bradleys next argue that the language in the warranty purporting to disclaim all causes of action alleging negligence and purporting to disclaim any right to recover mental-anguish damages violates the public policy of this state. We disagree.
 
 See Ex parte Holland Mfg. Co.,
 
 689 So.2d 65 (Ala.1996) (concluding that contracts protecting one from the consequences of one’s own negligence are valid and enforceable if the parties knowingly, evenhandedly, and for valid consideration, enter into an agreement whereby one party agrees to indemnify against the other party’s own wrongs);
 
 Nationwide Mut. Ins. Co. v. Hall,
 
 643 So.2d 551 (Ala.1994) (concluding that an agreement to indemnify a party for its own negligence is enforceable if the requisite intent to do so is clear); and
 
 Sears Termite & Pest Control, Inc. v. Robinson,
 
 883 So.2d 153 (Ala.2003) (rejecting the argument that a limitation in a contract against recovery of consequential and indirect damages, including emotional-distress damages, was unconscionable). “Contracting parties have a right to express the limitations .under which they will be bound, and such clearly manifested limitations will be recognized by the courts.”
 
 Campbell v. Southern Roof Deck Applicators, Inc.,
 
 406 So.2d 910, 913 (Ala.1981) (citing
 
 United States Fid. & Guar. Co. v. Jacksonville State Univ.,
 
 357 So.2d 952 (Ala.1978)).
 
 See also McDonald v. Schwartz,
 
 706 So.2d 1230, 1232 (Ala.Civ.App.1997) (“Where the parties have set out in a written contract the warranties agreed upon and have provided a remedy in ease of a breach of warranty, the remedy thus provided is exclusive.”).
 

 Because the limited-warranty agreement is valid, we must enforce that agreement pursuant to its plain terms. Therefore, we hold that the Bradleys waived their claims alleging breach of the implied warranties of habitability and workmanship, then-claims of general negligence, and their right to seek damages for mental anguish. We, therefore, conclude that the trial court erred in denying Stewart’s and Morgan’s motions for a judgment as a matter of law as to the Bradleys’ negligent-installation,
 
 *543
 
 negligent-construction, and negligent-supervision claims, as well as to their right to recover mental-anguish damages.
 

 Breaclis-of-Contract Claim
 

 The Bradleys did not, however, waive their right to pursue a breach-of-contract claim against Stewart and Morgan by virtue of the limited-warranty agreement. As recognized in
 
 Turner, supra:
 

 “An action alleging a breach of warranty is a subset of a breach-of-contract action. ... In the context of construction of a house, this Court explained in
 
 Stephens[ v. Creel,
 
 429 So.2d 278 (Ala.1983),] that ‘[b]y its very nature it is the failure to
 
 construct
 
 the house in a workmanlike manner that constitutes the breach’ of the warranty. 429 So.2d at 280.”
 

 903 So.2d at 90-91. Thus, by alleging that Stewart and Morgan had failed to convey to them a properly constructed house and had failed to honor their obligation to repair the defects in that house, the Brad-leys alleged that Stewart and Morgan had breached their obligations under the warranty agreement.
 

 Stewart and Morgan, relying on
 
 Tuner,
 
 argue that the Bradleys failed to comply with the notice requirement of the warranty agreement and that, as a result, they waived any breach-of-express-warranty claim that may have accrued to them. We disagree because we find
 
 Tuner
 
 distinguishable.
 

 In
 
 Tuner,
 
 the purchasers provided no notice at all to the builder until four years after the warranty had expired, and there was no indication in
 
 Tuner
 
 that the builder had accepted or acted upon the post-warranty notice provided by the purchasers. In this case, however, evidence was presented to indicate that the Bradleys had orally notified Stewart and Morgan within the warranty period that the house was cracking, sagging, and had become “unlevel,” implying foundation problems with the house.
 
 [2]
 
 The evidence also indicated that Stewart and Morgan had acted on the Bradleys’ oral notice and had attempted to repair the house. James Bradley testified that the builders had attempted “again and again” to level up the house but that they could not fix the problem. Additionally, Stewart admitted that he had been in the crawl space under the house multiple times while the Bradleys were living in the house. Other evidence indicated that someone had attempted to prop up the foundation by “shimming” it in numerous places in the crawl space under the house.
 

 Based on that evidence, a reasonable jury could conclude that Stewart and Morgan had waived their right to written notice by accepting oral notice and actual knowledge as a substitute.
 

 “Waiver is defined as the voluntary surrender or relinquishment of some known right, benefit, or advantage.
 
 City of Montgomery v. Weldon,
 
 280 Ala. 463, 195 So.2d 110 (1967). However, it is well established that a party’s intention to waive a right is to be ascertained from the external acts manifesting the waiver.
 
 Givens v. General Motors Acceptance Corp.,
 
 56 Ala.App. 561, 324 So.2d 277 (1975). This intention to waive a right may be found where one’s course of conduct indicates the same or is inconsistent with any other intention.”
 

 Waters v. Taylor,
 
 527 So.2d 139, 141 (Ala.Civ.App.1988).
 
 See also T.J. Stevenson &
 
 
 *544
 

 Co. v. 81,193 Bags of Flour,
 
 629 F.2d 338 (5th Cir.1980) (despite contractual provision requiring notice of breach of warranty to be sent by registered mail, seller’s responses to buyer’s initial noneomplying complaints established a course of performance allowing that notice provision to be disregarded); and
 
 Becker Roofing Co. v. Pike,
 
 230 Ala. 289, 160 So. 692 (1935) (contractual provision requiring buyer to notify seller in writing of leaks in roof held waived in view of undisputed evidence indicating that buyer had repeatedly notified seller by telephone, that seller had accepted those calls and promised to repair, and that seller’s efforts to repair had been unsuccessful).
 
 See also
 
 § 7-2-208, Ala. Code 1975 (addressing course of performance) (repealed January 1, 2005, by Ala. Acts 2004, Act 2004-524); and § 7-2-209, Ala.Code 1975 (addressing modification, rescission, and waiver).
 

 Stewart and Morgan next argue that the Bradleys waived any right to assert a breach-of-contract claim based on the limited warranty by failing to give them a reasonable opportunity to make the necessary repairs. Stewart and Morgan testified that they had been prepared to repair the Bradleys’ foundation and flooring system but that the Bradleys had prevented them from doing so. However, the record contains testimony from the Brad-leys to indicate that they had allowed Stewart and Morgan a reasonable opportunity to repair the defects. For example, James Bradley testified that he had repeatedly notified Stewart and Morgan of the problems with the house and that Stewart and Morgan had attempted to correct those problems “again and again.” Additionally, Stewart testified that he was in the crawl space of the Bradleys’ house “at least four times” while the Bradleys lived in the house. Further, expert testimony indicated that someone had attempted to prop up the Bradleys’ house by placing shims and wedges throughout the crawl space in an attempt to level the foundation of the house.
 

 We conclude that the trial court did not err in allowing the jury to decide the breach-of-contract claim because a factual dispute existed as to whether the Bradleys had allowed Stewart and Morgan a reasonable opportunity to repair the house.
 
 See General Motors Corp. v. Earnest,
 
 279 Ala. 299, 184 So.2d 811 (1966) (recognizing that jury could properly have found that, after the purchaser allowed the seller 15 tries to repair vehicle, purchaser had allowed seller reasonable opportunity but that seller could not honor its warranty);
 
 DeLoach v. General Motors Corp.,
 
 187 Ga.App. 159, 159, 369 S.E.2d 484, 485 (1988) (buyers of defective new automobile were not entitled to reversal of judgment entered on jury’s verdict in favor of seller in a breach-of-warranty action against seller when purchasers did not allow seller an opportunity, within a reasonable time, to replace or repair the defects under the terms of the warranty); and
 
 Woodruff v. Johnson,
 
 560 So.2d 1040, 1041 (Ala.1990) (“A directed verdict [now a judgment as a matter of law] is properly granted only where there is a complete absence of proof on a material issue or where there are no disputed questions of fact for the jury’s determination.”).
 

 Good Count/Bad Count
 

 On appeal, Stewart asserts that this case presents a “good count-bad count” situation and requires, at a minimum, reversal for a new trial.
 
 See Larrimore v. Dubose,
 
 827 So.2d 60 (Ala.2001) (discussing good count-bad count situations); and
 
 Aspinwall v. Gowens,
 
 405 So.2d 134, 138 (Ala.1981). Wé agree. We have concluded that the Bradleys’ breach-of-contract claim was properly submitted to the jury while the negligent-installation,
 
 *545
 
 negligent-construction, and negligent-supervision claims were improperly submitted to the jury. Stewart properly presented that argument to the trial court in his motions for a judgment as a matter of law. Because the jury returned a general verdict, we are unable to determine whether the damages awarded by the jury were based on the good count — breach of contract — or the bad counts — the negligence counts. Thus, the judgment as to Stewart must be reversed, and this cause must be remanded for a new trial only on the breach-of-contract claim against Stewart.
 
 See Larrimore, supra;
 
 and
 
 Aspinwall, supra. See also AmSouth Bank v. Tice,
 
 923 So.2d 1060 (Ala.2005) (reversing for new trial because of good count-bad count situation); and
 
 Delta Health Group, Inc. v. Stafford,
 
 887 So.2d 887 (Ala.2004) (accord).
 

 Jury Instructions
 

 Morgan failed to argue the “good count-bad count” issue on appeal. We, therefore, cannot reverse the judgment as to him on that ground. “We will not reverse a trial court’s judgment based on arguments not presented to the trial court or based on arguments not made to this court.”
 
 Brown v. Wal-Mart Stores, Inc.,
 
 864 So.2d 1100, 1104 (Ala.Civ.App. 2002). However, Morgan, as well as Stewart, did argue on appeal that the trial court erred to reversal by refusing to properly instruct the jury as to the appropriate measure of damages for injury to real property. The trial court instructed the jury as follows:
 

 “Damages ... for a breach of contract is the sum which would place the injured party in the same condition that he or she would have occupied if the contract had not been breached. You may consider the repair cost claim by the Plaintiffs in determining the cost of damages on this issue. If you are reasonably satisfied from the evidence that the Plaintiff or the Plaintiffs are entitled to recover and you arrive at an amount of your award, you should then determine from the evidence the date the Plaintiff was entitled to the damages arrived by you and then you can add interest at the rate of 6 percent per annum from the date that you find the Plaintiff was entitled to receive the damages to the present date of today. Other damages, where the contractual duty or obligation is so related with matters of mental concern or apprehensiveness or with the feelings of the party to whom the duty is owed, that breach of that duty will necessitate or reasonably result in mental anguish and such matters were reasonably within the contemplation of the parties when the contract was made, then in such event, if the Plaintiffs are entitled to recover, they would be entitled to recover such sum as would reasonably compensate them for mental anguish. ... The Plaintiffs claim compensation for property damages to real property. Evidence has been introduced in this case about the expense of repairs to this house. The evidence may be considered by you in determining the extent of damage suffered by the Plaintiffs and is going to the question of market value. If the house could be restored to its former condition at a reasonable expense, which would exceed its reasonable market value at the time of its damage as found by you from the evidence, such reasonable repair expense would represent the damage which the Plaintiffs would be entitled to recover. If the property was so damaged that it could not be restored to its former condition and value at a reasonable expense equal to or less than its reasonable market value at the time of its damage as found by you from the evidence, then the Plaintiff would only
 
 *546
 
 be entitled to recover the market value less any salvage value as found by you from the evidence. The measure of damages for damage to real property is the difference in the reasonable market value of the property before its damage and the reasonable market value immediately after the damage.”
 

 Thus, the trial court instructed the jury as to the measure of damages for injury to real property and for injury to personal property.
 
 See
 
 Garner
 
 v. Kent Excavation, Inc.,
 
 532 So.2d 1033, 1034 (Ala.Civ.App.1988) (addressing the proper measure of damages for injury to real property and injury to personal property); Alabama Pattern Jury Instructions — Civil (“APJI”) 11.26 (2d ed. 1993) (pattern jury instructions for measure of damages for injury to real property); and APJI 11.24 (pattern jury instruction regarding injury to personal property). We agree with Morgan that the trial court’s instruction was erroneous and prejudicial to him and Stewart.
 

 In this case, the parties specified in the limited-warranty agreement the measure of damages to be applied in the event of a latent defect. In that agreement, they agreed that
 

 “[i]f a Latent Defect occurs in an item which is covered by this Limited Warranty Agreement, the Seller will repair, replace, or pay to the Buyer the reasonable cost of repairing or replacing, any such item. The Seller shall in its sole discretion determine whether to repair, replace or pay the reasonable cost of repairing or replacing any such item. THE LIABILITY OF THE SELLER IS STRICTLY LIMITED TO THE OBLIGATION TO REPAIR, REPLACE OR PAY THE REASONABLE COST OF REPAIRING OR REPLACING, ANY SUCH ITEM.”
 

 (Capitalization in original.) As a result, the trial court should have instructed the jury that, if it found in favor of the Brad-leys, it could award damages equal to the “reasonable cost of repairing or replacing” the latent defects in the Bradleys’ house. As a result, the instruction given by the trial court as to the proper measure of damages was erroneous.
 

 Additionally, the trial court instructed the jury that it could properly consider an award of mental-anguish damages for Mary Bradley if it found in favor of the Bradleys. However, as we concluded above, the Bradleys waived any such right of recovery by virtue of their acceptance of the limited warranty. That warranty agreement expressly and conspicuously stated that it was given in lieu of any claim for mental anguish or distress. Therefore, the giving of that instruction was also erroneous.
 

 In
 
 Southeast Environmental Infrastructures, L.L.C. v. Rivers,
 
 12 So.3d 32 (Ala.2008), the supreme court stated:
 

 “The standard for reviewing a trial court’s charge to the jury is as follows:
 

 “ ‘ “In a jury case, a party is entitled to have its case tried to a jury that is given the appropriate standard by which to reach its decision, and a wrongful refusal of a requested jury charge constitutes a ground for a new trial. See,
 
 C.I.T. Financial Services, Inc. v. Bowler,
 
 537 So.2d 4 (Ala.1988). An incorrect, misleading, erroneous, or prejudicial charge may form the basis for granting a new trial. See,
 
 Nunn v. Whitworth,
 
 545 So.2d 766 (Ala.1989). However, the refusal of a requested, written instruction, although a correct statement of the law, is not cause for reversal on appeal if it appears that the same rule of law was substantially and fairly given to the jury in the trial court’s oral charge. See, Rule 51, Ala. R. Civ. P. When examining a charge asserted to be
 
 *547
 
 erroneous, this Court looks to the entirety of the charge to see if there is reversible error. See,
 
 Grayco Resources, Inc. v. Poole,
 
 500 So.2d 1030 (Ala.1986).” ’
 

 “Cackowski v. Wal-Mart Stores, Inc.,
 
 767 So.2d 319, 327 (Ala.2000) (quoting
 
 Shoals Ford, Inc. v. Clardy,
 
 588 So.2d 879, 883 (Ala.1991)). Additionally, ‘[a]ny error or defect which does not affect the substantial rights of the parties may be disregarded.’
 
 Bishop v. State Auto. Mut. Ins. Co.,
 
 600 So.2d 262, 265 (Ala.Civ.App.1991) (citing Rule 61, Ala. R. Civ. P.). As a result, the jury instruction must be erroneous as well as prejudicial, and this Court cannot presume prejudice.
 
 Brabner v. Canton,
 
 611 So.2d 1016, 1018 (Ala.1992);
 
 Preferred Risk Mut. Ins. Co. v. Ryan,
 
 589 So.2d 165, 167 (Ala.1991). The appellant has the burden of demonstrating that an erroneous jury instruction was prejudicial.
 
 See Ryan,
 
 589 So.2d at 167 (citing
 
 Dinmark v. Farrier,
 
 510 So.2d 819 (Ala.1987)).”
 

 12 So.3d at 43-44.
 

 The trial court improperly instructed the jury as to the measure of damages to be considered under the breach-of-contract claim and also improperly instructed the jury that it could award damages for mental anguish. Because the jury was not given the proper instructions to use in awarding damages, on the only count properly before it, we must reverse the judgment entered on the jury’s verdict and remand the case for a new trial on the Bradleys’ breach-of-contract claim.
 

 Conclusion
 

 We conclude that the trial court erred in denying Stewart’s and Morgan’s motions for a judgment as a matter of law as to the negligent-construction, negligent-installation, and negligent-supervision claims. The trial court also erred in failing to grant the motions for a judgment as a matter of law as to the Bradleys’ right to recover mental-anguish damages. Because this case represents a “good count-bad county” situation and because the trial court erred to reversal in its instructions to the jury, we reverse the trial court’s judgment and remand this cause for a new trial only on the Bradleys’ breach-of-contract claim.
 

 2070574 — REVERSED AND REMANDED WITH INSTRUCTIONS.
 

 2070575 — REVERSED AND REMANDED WITH INSTRUCTIONS.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.
 

 [1]
 

 . Stewart and Morgan did not dispute that the Bradleys’ house had been improperly constructed.
 

 [2]
 

 . We construe the evidence in the light most favorable to the Bradleys, as we must when reviewing the denial of a motion for a judgment as a matter of law.
 
 See Leonard v. Cunningham,
 
 4 So.3d at 1183-84.