PER CURIAM.
On December 17, 2003, Connie Hughes, as personal representative of the estate of Charles J. Hughes, deceased (“Hughes”), sued The Mitchell Company, Inc., in the Mobile Circuit Court seeking recovery of past-due monthly installments on a promissory note. Both parties filed motions for a summary judgment as to all claims. The trial court entered a summary judgment in favor of Hughes in the amount of $1,677.01 plus interest and in favor of The Mitchell Company as to any additional amounts sought. Hughes appeals; The Mitchell Company cross-appeals. In case no. 1060109, we affirm the summary judgment in part, reverse it in part, and remand. In case no. 1060201, we affirm the summary judgment.

Facts and Procedural History

On or about January 25, 1996, Ken Christian and Julian Graddick purchased all the existing stock of Pleasure Island Realty, Inc. (“PIR”), a real-estate-sales, -leasing, and -management business, from Charles Hughes and Connie Hughes for a total purchase price of $650,000. As part of the consideration paid to the Hugheses, Christian and Graddick agreed to execute a written promissory note (hereinafter referred to as “the Hughes note”) in the amount of $233,000 and payable in monthly installments, with interest at 8% per an-num, of $1,948.91 for 20 years beginning on February 1, 1996 (hereinafter referred to as “the Hughes indebtedness”). The Hughes note was not produced in evidence. It has never been located, and Connie Hughes stated in her affidavit that she has never seen it. The Hugheses received the February and March 1996 payments on the Hughes indebtedness pursuant to the Hughes note.
On March 20, 1996, The Mitchell Company entered into a “purchase and sale agreement” with PIR, providing for the sale of certain property-management contracts held by PIR. The purchase and sale agreement specified a purchase price of $682,500, to be made up of a cash component, a $100,000 promissory note, and the assumption by The Mitchell Company of some of PIR’s preexisting indebtednesses. Specifically, the purchase and sale agreement provided that The Mitchell Company “shall assume and pay in accordance with its terms that certain promissory note in the original amount of $233,133.00, by [PIR], as maker, in favor of [Charles] Hughes, as payee,” a copy of which was referenced in the purchase and sale agreement as attached, although the note was not attached. The purchase and sale agreement also required The Mitchell Company to execute and deliver a promissory note payable to PIR in the amount of $100,000, with interest at 7% commencing March 31, 1996, to be paid in a payment of $25,000 with accrued interest on Septem *195 ber 9, 1996, with the balance of $75,000 and accrued interest to be paid on March 31, 1997 (hereinafter referred to as “the purchase note”). The purchase and sale agreement included a purchase-price-adjustment clause:
“The Purchase Price shall be increased or decreased on and as of March 31, 1997 in accordance with this Paragraph 3(c) (the ‘Purchase Price Adjustment’) and the remaining principal balance of the Purchase Note on that date shall be increased or decreased to reflect the Purchase Price Adjustment. If, during the period commencing March 31, 1996 and ending March 31, 1997 (the ‘Adjustment Period’), gross rental commission income (but excluding housekeeping and maintenance fee income) actually received by [The Mitchell Company] from the Contracts and Future Contracts is less (or more) than $289,098.00, the Purchase Price shall be reduced (or increased) $2.36 for each $1.00 of shortfall (or overage) and the amount then due on the Purchase Note, including beginning principal and interest from March 31, 1996 on such new principal amount, shall be recalculated and paid. The Purchase Price Adjustment reduction or increase, if any, shall not be limited in amount. Any Purchase Price Adjustment decrease in excess of the amount of principal remaining unpaid under the Purchase Note shall be paid in cash by [PIR] to [The Mitchell Company] on or before April 15, 1997, and Ken Christian hereby personally guarantees the payment thereof.”
The Mitchell Company paid the purchase note off early on June 24, 1996, for a discounted payment of $50,000.
After March 31, 1997, The Mitchell Company calculated the purchase-price adjustment and determined that PIR and Christian, as guarantor, owed The Mitchell Company a purchase-price adjustment of $171,549.13. PIR and Christian refused to pay the purchase-price adjustment, and The Mitchell Company then sued PIR and Christian in the Baldwin Circuit Court. See Mitchell Co. v. Pleasure Island Realty, Inc., Baldwin Circuit Court, CV-97-1109. On April 7, 1998, the circuit court entered judgment against PIR and in favor of The Mitchell Company in the amount of $171,549.13. That judgment has not been satisfied. The Mitchell Company and Christian agreed to a settlement and to a release of The Mitchell Company’s claims against Christian personally for a payment of $20,000 made on December 20,1999.
On July 9, 1997, Charles Hughes filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Southern District of Alabama. In the disclosure statement and schedules filed under oath in that proceeding, Charles Hughes represented to the bankruptcy court and to his creditors that he owned only an “Undivided ½ interest in note receivable, Mitchell Co., full balance $222,-277.00 — Debtor owns ½ int.” An order confirming Charles Hughes’s Chapter 11 bankruptcy plan was entered by the bankruptcy court on May 18, 1998, and the bankruptcy case was closed on July 22, 1998. Charles Hughes died on December 7,1999.
As of December 15, 1999, the unpaid balance on the judgment awarding the purchase-price adjustment, including accrued interest, was approximately $187,000, with ongoing interest accruing at the rate of 12%. In accordance with the Hughes note, The Mitchell Company had timely paid scheduled monthly payments on the Hughes indebtedness through December 1999. By letter of January 12, 2000, The Mitchell Company informed Connie Hughes that effective January 2000 *196 it would no longer be servicing PIR’s obligation under the Hughes note. The Mitchell Company’s position was based on its belief that it had no further obligation under the purchase and sale agreement with PIR to make payments on the Hughes indebtedness because the unpaid balance owed by PIR on the judgment, after applying both the $20,000 settlement payment from Christian and the accrual of the statutory 12% rate of interest on unpaid judgment, more than offset the remaining installments due on the Hughes indebtedness as those installments fell due.
On July 10, 2000, Connie Hughes individually sued The Mitchell Company as a third-party beneficiary of The Mitchell Company’s contractual obligations to PIR under the purchase and sale agreement (that action will hereinafter be referred to as “Hughes /”). The Mitchell Company filed a motion to dismiss the action, asserting that Charles Hughes, who was deceased, was the sole payee of the Hughes indebtedness and, thus, that The Mitchell Company had no obligation to pay Connie Hughes individually. The circuit court held that the estate of Charles Hughes was an indispensable party and conditionally granted The Mitchell Company’s motion to dismiss, the condition being that Charles Hughes’s estate be added as a party within 30 days. The estate of Charles Hughes was added as a plaintiff, and both sides filed summary-judgment motions. The circuit court determined that
“Connie Hughes, as personal representative of the Estate of Charles Hughes, Sr. is entitled to summary judgment in her favor as a matter of law against [T]he Mitchell Company, Inc. for $60,416.21 principal, representing monthly payments through July 31, 2002, interest of $1912.66, representing interest on the principal portion of said monthly payments through July 31, 2002, and interest hereafter accruing,”
and that
“The Mitchell Company, Inc. is entitled to summary judgment as matter of law in its favor dismissing the claim of Connie W. Hughes, individually.”
The Mitchell Company appealed, and this Court affirmed, without an opinion, the circuit court’s judgment. Mitchell Co. v. Hughes (No. 1020023), 886 So.2d 904 (Ala.2003) (table).
Following the disposition of Hughes /, The Mitchell Company satisfied the judgment entered against it but failed to make any further payments that came due after July 31, 2002. On December 17, 2003, Hughes sued The Mitchell Company for recovery of the past-due monthly installments accruing from August 1, 2002, through December 17, 2003. Both parties filed summary-judgment motions. The circuit court entered a final judgment disposing of all claims, as follows:
“In considering de novo the arguments and authorities advanced by the parties in this case upon the facts presented, this Court concludes (a) that [The] Mitchell [Company’s] position that it is legally entitled to offset the unpaid balance of its judgment against [PIR], with interest accrued and accruing at the judgment rate of 12%, against installments on the Hughes indebtedness as they mature is well taken; (b) that, consistent with the Order and Judgment in [Hughes /], [The] Mitchell [Company’s] computation of the application of that offset is subject to adjustment based on a partial waiver of $77,625.00 of the offset amount as contended by [Hughes]; and (c) that under the principles of judicial estoppel [Hughes] is barred from claiming entitlement to more than half of the balance of the Hughes indebtedness.
*197 [[Image here]]
“15. The parties are in agreement that the principal balance owed on the entire Hughes indebtedness after payment of the December, 1999 installment was $211,249.87, of which [Hughes] is judicially estopped to claim to have been owed more than $105,624.94 with interest at 8%. Half of the $93,498.39 total offset balance to which [The Mitchell Company] was entitled as of January 1, 2000 ($46,749.20), with subsequently accruing interest at the judgment rate would have been usable to offset [Hughes’s] half of the indebtedness ‘on the back end.’ The installments recovered by [Hughes] under the Order and Judgment in [Hughes I ] were 31 installments of $1948.91. After applying 31 monthly payments of $1948.91 each to the amortization of $105,624.93 at 8%, the remaining principal balance claimable by [Hughes] would be $62,918.46. After 31 months, the $46,749.20 offset judgment balance with accrued interest at ■ 12% would have amounted to $61,241.45 .... [Hughes] is judicially es-topped to claim that the payments made under the Order and Judgment in [.Hughes 7] did not satisfy its entire claim against [The Mitchell Company] for servicing of the Hughes indebtedness except to the extent of the $1,677.01 differential, with interest at 8% from July 31, 2002 until paid.
“16. [Hughes’s] motion for summary judgment is hereby granted to the extent of the entry of judgment against [The Mitchell Company] in favor of Connie W. Hughes as Personal Representative of the Estate of Charles Hughes, Sr. in the sum of $1677.01, plus interest at eight percent (8%) per annum from July 31, 2002 until paid. [Hughes’s] motion for summary judgment is otherwise denied.
“17. The [Mitchell Company’s] motion for summary judgment is hereby granted insofar as it seeks a determination that Connie W. Hughes as Personal Representative of the Estate of Charles Hughes, Sr. is judicially estopped to claim or collect from [The Mitchell Company] any further amount in excess of the sum of $1677.01, plus interest at eight percent (8%) per annum from July 31, 2002 until paid. [Hughes’s] motion for summary judgment is otherwise denied.”
Hughes appealed, and The Mitchell Company cross-appealed.

Standard of Review

This Court has previously stated the standard by which it reviews the circuit court’s disposition of a summary-judgment motion:
“ ‘In reviewing the disposition of a motion for summary judgment, we utilize the same standard as that of the trial court in determining whether the evidence before the court made out a genuine issue of material fact’ and whether the movant was entitled to a judgment as a matter of law. Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Evidence is ‘substantial’ if it is of ‘such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).”
*198 Ex parte General Motors Corp., 769 So.2d 903, 906 (Ala.1999). See also Brown v. St. Vincent’s Hosp., 899 So.2d 227, 233 (Ala.2004). “Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant.” Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359, 362 (Ala.1993).

Discussion

Hughes argues that the circuit court erred by allowing The Mitchell Company to apply the unpaid balance of its judgment against PIR as an offset against the Hughes indebtedness. In entering a summary judgment in favor of The Mitchell Company, the circuit court held, in pertinent part:
“The Supreme Court of Alabama still follows the general law of contracts that when a third party beneficiary of a contract is entitled to maintain a direct action on a contract that right of action is subject to all limitations in the contract and ‘to supervening defenses arising by virtue of its terms.’ Restatement Contracts 2d, § 309(c) (2000 Supp.).
“ ‘It is a well-established principle of Alabama law that a contract made for the benefit of a third person may, at his election, be accepted and enforced by him. Michie v. Bradshaw, 227 Ala. 302, 149 So. 809 (1933). However, “[i]f he claims the benefits [of the contract], he also assumes the burdens.” Michie, 227 Ala. at 308, 149 So. at 814. See also, Ex parte Dyess, 709 So.2d 447 (Ala.1997) (nonsignatory plaintiff claiming the benefit of a contract as a third-party beneficiary is subject to arbitration agreement within that contract). “The law is clear that a third party beneficiary is bound by the terms and conditions of the contract that it attempts to invoke. ‘The beneficiary cannot accept the benefits and avoid the burdens of limitations of a contract.’ ” Interpool Ltd. v. Through Transport Mut. Ins. Ass’n Ltd., 635 F.Supp. 1503, 1505 (S.D.Fla.1985), quoting Trans Bay Engineers & Builders, Inc. v. Hills, 551 F.2d 370, 378 (D.C.Cir.1976). See Dunn Constr. Co. v. Sugar Beach Condominium Ass’n, Inc., 760 F.Supp. 1479 (S.D.Ala.1991); Lee v. Grandcor Medical Systems, Inc., 702 F.Supp. 252, 255 (D.Colo.1988) (“A third party beneficiary must accept a contract’s burdens along with its benefits”). It is thus clear that a third-party beneficiary cannot accept the benefit of a contract, while avoiding the burdens or limitations of that contract.’
“Georgia Power Co. v. Partin, 727 So.2d 2, 5 (Ala.1998). Consequently, any claim brought against [The Mitchell Company] by a holder of the Hughes indebtedness as a third party beneficiary of the contractual obligations of [The Mitchell Company] to [PIR] to pay the Hughes indebtedness is subject to the same rights, defenses, and offsets [The Mitchell Company] would have against [PIR] if it brought an action based on such obligations. While the conclusion might be different if the facts demonstrated a novation by agreement of the parties where the obligation to pay the Hughes indebtedness had been formally assumed by [The Mitchell Company] upon release of the existing obligors on such indebtedness, with the substitution in full of [The Mitchell Company] for such obligors, no such novation is demonstrated to have occurred under the facts here.”
Hughes alleges that the circuit court erred in applying general principles of contract law concerning third-party beneficiaries to this case. Hughes relies on Schneider *199 Moving & Storage Co. v. Robbins, 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984), and argues that “ ‘[w]here the language of the contract, or the circumstances under which it was executed, establish that the parties have provided that the right of the beneficiary is not to be affected by any defenses that the promisor might have against the promisee, the rule is inapplicable.’” (Hughes’s brief, at 44) (quoting Schneider, 466 U.S. at 371, 104 S.Ct. 1844).
In Schneider, the United States Supreme Court held, in pertinent part:
“[The promisors] argue that as third-party beneficiaries of the collective-bargaining agreements, the trustees are bound by the arbitration clauses provided therein to the same extent the [prom-isee] would be if it were seeking judicial enforcement of those agreements. [The promisors] rely on the general rule that the promisor may assert against the beneficiary any defense that he could assert against the promisee if the prom-isee were suing on the contract. See Restatement (Second) of Contracts § 309, Comment b (1981); S. Williston, Contracts § 395 (3d ed.1959); 4 A. Cor-bin, Contracts § 819 (1951). That rule, however, is merely a rule of construction useful in determining contractual intent. It should not be applied so inflexibly as to defeat the intention of the parties. Where the language of the contract, or the circumstances under which it was executed, establish that the parties have provided that the right of the beneficiary is not to be affected by any defenses that the promisor might have against the promisee, the rule is inapplicable. Restatement (Second) of Contracts § 309, Comment b (1981). See also 4 A. Corbin, Contracts §§ 818, 819 (1951).”
Schneider, 466 U.S. at 370-71, 104 S.Ct. 1844 (footnote omitted). The Schneider Court determined that if such an intention to protect the third-party beneficiary was found, then the general rule would not apply.
Hughes argues that the Schneider exception should apply because, she says, the following language from the purchase and sale agreement evidences The Mitchell Company and PIR’s intent to insulate the Hugheses from any defenses The Mitchell Company may have asserted against PIR by requiring that any purchase-price adjustment to which The Mitchell Company may have been entitled was to come from PIR and/or Christian:
“Any Purchase Price Adjustment decrease in excess of the amount of principal remaining unpaid under the Purchase Note shall be paid in cash by [PIR] to [The Mitchell Company] on or before April 15, 1997, and Ken Christian hereby personally guarantees the payment thereof.”
Hughes recognizes that the above-quoted language does not explicitly show an intention by The Mitchell Company and PIR to insulate the Hugheses from any defense The Mitchell Company may have asserted against PIR, but Hughes argues that the failure of the parties to specifically provide for the right of The Mitchell Company to recover any payment due under the purchase-price-adjustment clause from the amount it was to pay on the Hughes indebtedness is sufficient. Hughes does not cite any legal authority to support her contention.
Hughes has failed to point to any language in the purchase and sale agreement that evidences an intention of The Mitchell Company and PIR to insulate the Hughes-es, as third-party beneficiaries, from any defenses The Mitchell Company may have asserted against PIR. There is no language in the purchase and sale agreement that establishes the parties’ intention to insulate third-party beneficiaries from de *200 fenses available to The Mitchell Company against PIR.
In the same vein, Hughes also appears to argue that the structure of the purchase and sale agreement indicates an intention of the parties to insulate the Hugheses from any defense The Mitchell Company may have against PIR, thereby triggering the application of the Schneider exception. Hughes argues that “the determination of whether [The Mitchell Company] is entitled to recover an overpayment is based upon factors relating to the amount paid by [The Mitchell Company] to PIR and Christian, not the total amount paid by [The Mitchell Company]”; therefore, Hughes argues, “[t]he contractual factors considered in determining whether an overpayment has occurred assumes that the Hughes ... obligation [is] independent of whether an overpayment has occurred entitling [The Mitchell Company] to recover any amount from PIR (and/or Christian).” Hughes appears to argue that because the determination of the adjusted purchase price allegedly does not include a consideration of the entire purchase price of $682,500 (which included the Hughes indebtedness) but only what The Mitchell Company directly paid to PIR, then there is an inherent assumption that The Mitchell Company and PIR intended to insulate the Hugheses from any defense The Mitchell Company may have asserted against PIR.
Once again, other than mere allegations and assumptions, Hughes fails to point to any language in the purchase and sale agreement that evidences an intention of The Mitchell Company and PIR to insulate the Hugheses from any defenses The Mitchell Company may have asserted against PIR and, thus, fails to show that the Schneider exception should apply. Therefore, we affirm the circuit court’s judgment that any claim brought against The Mitchell Company by Hughes as a third-party beneficiary of the contract between The Mitchell Company and PIR is subject to the same defenses The Mitchell Company would have against PIR if it brought a claim based on such obligations.
Hughes next argues that even if this Court declines to apply the Schneider exception, The Mitchell Company’s offset defense is “barred in whole or in part by the doctrine of equitable estoppel.” (Hughes’s brief, at 52.)
“ ‘ “An estoppel ... has three important elements. The actor, who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence. The other relies upon that communication. And the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct.” ’ ”
Pierce v. Hand, Arendall, Bedsole, Greaves & Johnston, 678 So.2d 765, 768 (Ala.1996) (quoting Mazer v. Jackson Ins. Agency, 340 So.2d 770, 773 (Ala.1976), quoting in turn Dobbs, Remedies § 2.3 (1973)). Hughes argues that The Mitchell Company had knowledge of the Hugheses’ interest in the subject matter of The Mitchell Company’s action against PIR in that shares of the stock of PIR were pledged as security for the Hughes indebtedness. Hughes argues that The Mitchell Company’s failure to notify the Hugheses of its action against PIR was misleading and that it caused harm to the Hugheses because it did not allow the Hugheses the ability to protect their “right to receive future payments from [the] Mitchell [Company] on the Hughes indebtedness.” (Hughes’s brief, at 54.)
Hughes points to no evidence in the record to show that she reasonably relied on The Mitchell Company’s failure to notify the Hugheses of its action against PIR *201 and how that reasonable reliance caused Hughes material harm. Undisputedly, The Mitchell Company sent notice to the Hugheses that it had taken over the management of PIR and that it would be servicing the Hughes indebtedness. However, nothing in The Mitchell Company’s letter notifying the Hugheses of the change in management indicated that Christian and Graddick had been released from liability on the Hughes indebtedness, and Christian and Graddick remain personally liable to the Hugheses. The Mitchell Company’s ability to offset the Hughes indebtedness by the amount of its unpaid judgment against PIR does not affect Hughes’s right to recover the Hughes indebtedness and causes no material harm to Hughes. The circuit court properly granted The Mitchell Company the right to offset.
As cross-appellant, The Mitchell Company argues that the circuit court erred in finding that its prepayment to PIR of the purchase note resulted in a partial waiver of The Mitchell Company’s right of offset against the Hughes indebtedness. The circuit court held, in pertinent part, as follows:
“[Hughes’s] argument under its ‘partial waiver’ theory is that the contemplation of the Purchase and Sale Agreement was that at the time the Purchase Price Adjustment was to be calculated, a balance of $75,000 plus interest accruing at 7% from September 9, 1996 would then still be owed by [The Mitchell Company] under the Purchase Note, and that any Purchase Price Adjustment due [The Mitchell Company] would first be setoff against that unpaid balance before being asserted as a setoff against payments on the Hughes indebtedness. [Hughes] argues that when [The Mitchell Company] elected to prepay the Purchase Note at a discount price of $50,000 in June, 1996, before any payment on the Purchase Note came due, [The Mitchell Company] frustrated the purpose for which the Purchase Note was intended, which was to provide the primary vehicle for effecting a reduction in the purchase price. [The Mitchell Company] has at all times conceded that but for the right to offset against payment of the Hughes indebtedness in order to realize upon the Purchase Price Adjustment, it would have continued to pay the installments of the Hughes indebtedness as they fell due. The record also establishes that [The Mitchell Company] understood at the time it agreed to pay off the Purchase Note early at.a discount that it was in effect giving up security for effecting any Purchase Price Adjustment it might later be determined to be entitled to. As argued by [Hughes], waiver occurs when a party in possession of a right, whether arising out of law or a contract, with full knowledge of the material facts, performs acts which are inconsistent with the right or its intention to rely on that right. Dominex, Inc. v. Key, 456 So.2d 1047 (Ala.1984); Bassett v. Newton, 658 So.2d 398 (Ala.1995).”
The Mitchell Company argues that there is no evidence in the record supporting the circuit court’s finding that, by paying the remaining balance of the purchase note early, The Mitchell Company waived its right to offset the remaining balance of the purchase note. Contrary to The Mitchell Company’s claim, there is ample evidence showing that The Mitchell Company waived its right to offset.
“ ‘Waiver is defined as the voluntary surrender or relinquishment of some known right, benefit, or advantage. City of Montgomery v. Weldon, 280 Ala. 463, 195 So.2d 110 (1967). However, it is well established that a party’s inten *202 tion to waive a right is to be ascertained from the external acts manifesting the waiver. Givens v. General Motors Acceptance Corp., 56 Ala.App. 561, 324 So.2d 277 (1975). This intention to waive a right may be found where one’s course of conduct indicates the same or is inconsistent with any other intention.’ ”
Stewart v. Bradley, 15 So.3d 533, 543 (Ala.Civ.App.2008) (quoting Waters v. Taylor, 527 So.2d 139, 141 (Ala.Civ.App.1988)).
It is clear from the face of the purchase and sale agreement and from the deposition testimony of Paul Wesch, general counsel for The Mitchell Company, that the balance remaining on the purchase note as of March 31, 1997, was to be recalculated, taking into account the purchase-price adjustment. The purchase and sale agreement states that “[a]ll remaining principal and interest on the Purchase Note shall be due on March 31, 1997 (subject to the Purchase Price Adjustment described below).” The purchase-price-adjustment clause states:
“The Purchase Price shall be increased or decreased on and as of March 31, 1997 in accordance with this Paragraph 3(c) (the ‘Purchase Price Adjustment’) and the remaining principal balance of the Purchase Note on that date shall be increased or decreased to reflect the Purchase Price Adjustment. If, during the period commencing March 31, 1996 and ending March 31, 1997 (the ‘Adjustment Period’), gross rental commission income (but excluding housekeeping and maintenance fee income) actually received by [The Mitchell Company] from the Contracts and Future Contracts is less (or more) than $289,098.00, the Purchase Price shall be reduced (or increased) $2.36 for each $1.00 of shortfall (or overage) and the amount then due on the Purchase Note, including beginning principal and interest from March 31, 1996 on such new principal amount, shall be recalculated and paid. The Purchase Price Adjustment reduction or increase, if any, shall not be limited in amount. Any Purchase Price Adjustment decrease in excess of the amount of principal remaining unpaid under the Purchase Note shall be paid in cash by [PIR] to [The Mitchell Company] on or before April 15, 1997, and Ken Christian hereby personally guarantees the payment thereof.”
As evidenced by the above-quoted language of the purchase and sale agreement, the balance due on the purchase note was to be recalculated, applying the purchase-price adjustment, which calculation was to occur on March 31, 1997. As evidence of The Mitchell Company’s knowledge of that fact, Wesch testified as follows:
“Well, the purchase price adjustment is referred to in this paragraph. And, in summary, it says you offset or decrease the price first against the purchase note, the hundred thousand dollar note that we were talking about.
[[Image here]]
“And then it says the purchase price adjustment reduction or increase shall not be limited in amount.”
The Mitchell Company entered into the purchase and sale agreement with the understanding that the balance due on the purchase note as of March 31, 1997, was to be used as an offset to a possible increase of the purchase price under the purchase-price-adjustment clause. With that knowledge, The Mitchell Company, when it paid the purchase note early, voluntarily relinquished the right to offset the balance of the purchase note against a possible increase in purchase price under the purchase-price-adjustment clause. Therefore, the circuit court did not err in finding that The Mitchell Company had partially *203 waived its right to offset the PIR judgment.
Having determined that the circuit court properly held that The Mitchell Company has the right to apply the unpaid balance of its judgment against PIR, minus the portion it waived, as an offset against its obligation under the Hughes indebtedness, we now consider whether the circuit court properly determined that Hughes was barred by the doctrine of judicial estoppel from claiming more than a one-half interest in the Hughes indebtedness. The doctrine of judicial estoppel exists to “ ‘protect! ] the integrity of the judicial system, not the litigants.’ ” Ex parte First Alabama Bank, 883 So.2d 1236, 1243 (Ala.2003) (quoting Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1286 (11th Cir.2002)). In First Alabama, this Court held:
“The United States Supreme Court in New Hampshire v. Maine, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001), recently observed that ‘ “[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle” ’ and then identified several factors as informative in determining the applicability of the doctrine of judicial estoppel. 532 U.S. at 750-51, 121 S.Ct. 1808 (quoting Allen v. Zurich Ins. Co., 667 F.2d 1162, 1166 (4th Cir. 1982)). The Court held that for judicial estoppel to apply (1) ‘a party’s later position must be “clearly inconsistent” with its earlier position’; (2) the party must have been successful in the prior proceeding so that ‘judicial acceptance of an inconsistent position in a later proceeding would create “the perception that either the first or second court was misled” ’ (quoting Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 599 (6th Cir.1982)); and (3) the party seeking to assert an inconsistent position must ‘derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.’ 532 U.S. at 750-51, 121 S.Ct. 1808.”
883 So.2d at 1244-45.
In the present case, the circuit court determined that Hughes was barred by the doctrine of judicial estoppel from claiming more than one-half of the Hughes indebtedness because Charles Hughes had successfully claimed a one-half interest in the Hughes indebtedness in his 1997 bankruptcy proceedings. The circuit court reasoned that allowing Hughes to claim a full interest in the Hughes indebtedness in the present case would be “clearly inconsistent” with the position Charles Hughes took in the 1997 bankruptcy proceeding, thereby creating “the perception that either the first or second court was misled.” The circuit court held that Hughes gained an unfair advantage from the inconsistent positions and, thus, is now barred by the doctrine of judicial estoppel from claiming more than a one-half interest. We disagree.
As observed above, there is no general formulation of principle dictating when the doctrine of judicial estoppel applies; such a decision is left to the court’s discretion, enlightened by several informative factors gleaned from precedent of this Court and the United States Supreme Court in the landmark case of New Hampshire v. Maine, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). Given the specific circumstances of the present case, it is clear that Hughes has not asserted an inconsistent position in order to gain an unfair advantage; she is merely asserting a position consistent with the judgment in Hughes I. Instead, it appears that The Mitchell Company is the party attempting to gain an unfair advantage by asserting inconsistent positions. In Hughes I, The *204 Mitchell Company successfully argued that Connie Hughes had no claim to the Hughes indebtedness, leaving Hughes entitled to the entirety of the Hughes indebtedness. Now, having successfully argued in Hughes I that Hughes was the sole payee on the Hughes indebtedness, The Mitchell Company reverses course and argues that, because of a bankruptcy proceeding that occurred before the circuit court decided Hughes I, Hughes is barred by the doctrine of judicial estoppel from claiming more than one-half of the Hughes indebtedness. Such positions are clearly inconsistent and asserted to gain an unfair advantage. Allowing the circuit court’s judgment to stand would create a windfall for The Mitchell Company amounting to half the past-due installments of the Hughes note.
Further, we hold that the doctrine of res judicata bars The Mitchell Company from arguing that Hughes is entitled to any interest less than the entire interest in the Hughes indebtedness.
In John Hancock Mutual Life Insurance Co. v. Large, 230 Ala. 621, 624, 162 So. 277, 279 (1935), this Court held:
“The general rule that suit can be brought to recover only demands already accrued is not to be questioned.
“In a suit upon past-due installments, due under one and the same contract, the general well-known rule at law is that present recovery is limited to past-due installments at the time of suit filed, but the judgment is pleadable as res adjudicata of the original obligation, and in suits for later installments defenses are limited to subsequent matters going to the continued existence of the obligation to pay the installments then in suit.”
In Hughes I, Connie Hughes argued, consistent with Charles Hughes’s position in his 1997 bankruptcy proceeding, that she held the Hughes indebtedness jointly with Charles Hughes. The Mitchell Company argued that Connie Hughes had no claim to the Hughes indebtedness and thus moved to have her dismissed from the case. The circuit court agreed with The Mitchell Company and ordered that the full amount of the past-due installments be paid to the estate of Charles Hughes alone. In the present action, consistent with the judgment in Hughes I, Hughes claims the entirety of the Hughes indebtedness.
Under John Hancock, the judgment in Hughes I is pleadable in the present action as res judicata of the original obligation. The Mitchell Company may raise only “subsequent matters” as a defense to paying its obligation. The 1997 bankruptcy proceeding is not a subsequent matter; thus, it may not be pleaded as a defense. The doctrine of res judicata bars The Mitchell Company from arguing that Hughes is not entitled to the entirety of the Hughes indebtedness. The circuit court’s judgment regarding this issue is reversed.

Conclusion

Based on the foregoing, this Court affirms in part and reverses in part the summary judgment entered in case no. 1060109, and we remand the case for proceedings consistent .with this opinion. As the circuit court held, The Mitchell Company is entitled to apply its unpaid judgment against PIR, minus the amount it waived, as an offset against the Hughes indebtedness. However, contrary to the circuit court’s holding, Hughes is not barred by the doctrine of judicial estoppel from claiming more than a one-half interest in the Hughes indebtedness. Instead, the doctrine of res judicata establishes that, consistent with the judgment in Hughes I, Hughes is entitled to claim the *205 entirety of the Hughes indebtedness. Further, this Court affirms the summary judgment entered in case no. 1060201.
1060109 — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
1060201 — AFFIRMED.
COBB, C.J., and LYONS, WOODALL, STUART, SMITH, BOLIN, PARKER, and SHAW, JJ., concur.
MURDOCK, J., concurs in the result.